Deshawn HUBBARD, Plaintiff,

v.

Dr. THAKUR, M.D., Dr. Antonini, M.D., Dr. Larky, M.D., Dr. M. Clark, M.D., Dr. Romono, M.D., Mooney, P.A., Potter, P.A., Craig Hutchingson, Defendants.

No. 03–10058–BC.

United States District Court, E.D. Michigan, Northern Division.

Oct. 26, 2004.

Deshawn Hubbard, 236376, Southern Michigan Correctional Facility Jackson, MI, Pro se.

Ronald W. Chapman, Sarah M. Bailey, Chapman Assoc., Bloomfield Hills, MI, Maryellen Mcleod, Richard A. Kudla Assoc., Southfield, MI, Julia R. Bell, Michigan Department of Attorney General Corrections Division, Lansing, MI, for Defendant.

## OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS, AND REFERRING MATTER TO MAGISTRATE JUDGE

LAWSON, District Judge.

The motion to dismiss now before the Court in this prisoner civil rights case requires the Court to interpret a section of the Prison Litigation Reform Act that precludes a prisoner from bringing a federal lawsuit under Section 1983 challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The magistrate judge recommended that the Court adopt the view that a complaint containing both exhausted and unexhausted claims must be dismissed in its entirety. The Court reads the statute differently and concludes that neither the statutory language nor the underlying policy considerations require a "total exhaustion" rule, as is the case with petitioners for writs of habeas corpus, *see Rose v. Lundy*, 455 U.S. 509, 516–17, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), and it is not appropriate to apply such a rule in this case; therefore, only the unexhausted claims should be dismissed, and the exhausted claims may proceed. The Court will reject the recommendation of the magistrate judge, grant the motion to dismiss without prejudice the claims against defendants Dr. Antonini and Craig Hutchingson, deny the motions to dismiss on the basis of the so-called "total exhaustion" rule, and refer the case back to the magistrate judge for further pretrial proceedings, including revisiting the motions to dismiss or for summary judgment on the merits.

### I.

The plaintiff is presently incarcerated at Southern Michigan Correctional Facility in Jackson, Michigan serving a prison term of fifteen to thirty years that began in 1994. He filed this *pro se* prisoner civil rights suit under 42 U.S.C. § 1983 claiming that several prison doctors and physicians' assistants violated his Eighth Amendment rights by treating his medical needs with deliberate indifference. The plaintiff asserts in his complaint that he has genetically-acquired sickle cell anemia, a condition that was discovered while the plaintiff was incarcerated. Untreated, the disease can cause the patient severe pain and can

be life threatening. More than four years ago, the plaintiff was referred to a hematologist/oncology clinic and added to its roster of regular patients. At that time, the plaintiff's treating physician placed him on a regime of prescription medication. Until the plaintiff was transferred to G. Robert Cotton Correctional Facility in November of 2001, the plaintiff regularly received approval from prison officials to remain on his medications.

After his transfer, however, prison officials began to refuse him medication and doctor visits. On March 13, 2002, the plaintiff was taken to Foote Hospital in Jackson, Michigan for a sickle cell crisis attack. Hematologist Dr. R. Clark later discharged the plaintiff with a prescription medication order to be filled by the prison physician or a resident nurse practitioner. On July 11, 2002, the plaintiff was again seen by Dr. Clark. The plaintiff explained that the prison would not honor the doctor's orders, and Dr. Clark instructed registered nurse Teri Rogers to telefax or telephone Dr. Thakur at the prison to explain the gravity of the plaintiff's condition and the necessity of the prescription medication. On July 17, 2002, the plaintiff filed a grievance against Dr. Thakur for failing to provide the medication.

On October 10, 2002, Dr. M. Clark, a prison physician, refused the plaintiff medical treatment. On November 9, 2002, the plaintiff was taken to Duane Waters Hospital for another sickle cell crisis. Instead of following proper procedures including the use of I.V. fluids, lab tests, and oxygen, the doctor on duty administered pain shots and sent the plaintiff back to his cell while he was still in crisis. The plaintiff remained in acute pain until his admission to the hospital several days later. On November 22, 2002 and December 2, 2002, the plaintiff sent letters to the Michigan Attorney General requesting intervention and investigation, both of which went unanswered. On December 12, 2002, the plaintiff sent a letter to the director of the Correctional Medical Service, Craig Hutchingson. This letter also went unanswered.

The plaintiff filed his civil rights complaint on March 3, 2003. On May 5, 2003, the magistrate judge, who performed an initial screening of the lawsuit pursuant to 28 U.S.C. § 1915A(a), found that although the plaintiff had alleged exhaustion, he had failed to either attach supporting documentation or describe with specificity the administrative proceeding and its outcome. The magistrate judge issued an order that the plaintiff provide such information by June 1, 2003 or a recommendation for dismissal would follow. The defendants filed an objection to the order arguing that pursuant to the Sixth Circuit's decision in *Baxter v. Rose*, 305 F.3d 486 (6th Cir. 2002), the plaintiff was not entitled to an extension. The Court overruled the objection, distinguishing *Baxter* on the grounds that the plaintiff in that case failed to allege exhaustion, the magistrate judge's order did not amount to an allowance to amend the complaint, and plaintiff could furnish evidence to substantiate the allegations he had already made.

The plaintiff then filed thirty-four pages of grievance documentation, which the magistrate judge determined demonstrated exhaustion of some but not all of the claims against all of the defendants. Some of the defendants filed a motion to dismiss, in which the rest of the defendants joined, alleging that the plaintiff failed to state a cause of action under 42 U.S.C. § 1983, exhaust his administrative remedies, establish more than lack of due care was involved, allege facts that his sickle cell anemia was a serious medical need, and present evidence that his illness was not

addressed and treated by the prison physicians.

The plaintiff contends in response to the defendants' motion to dismiss that he complied with the magistrate judge's order to furnish evidence of exhaustion, sickle cell anemia is a life-threatening disease, medication and doctor visits are essential to treating the disease, and he was denied treatment on several occasions. The magistrate judge filed a report and recommendation on October 16, 2001 recommending that the defendants' motion to dismiss be granted and the case dismissed for failure to exhaust available administrative grievances with respect to all named defendants. After reviewing relevant case law, the magistrate judge concluded that, although the Sixth Circuit has not decided the issue, a total exhaustion rule was appropriate under the PLRA.

### II.

In a motion to dismiss under Fed. R.Civ.P. 12(b)(6), the allegations in the complaint are taken as true and are viewed favorably to the non-moving party. *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995). The purpose of the motion is to test the legal sufficiency of the complaint, not the probability of success on the merits. *Ecclesiastical Order of Ism of Am, Inc. v. Chasin,* 653 F.Supp. 1200, 1205 (E.D.Mich. 1986). The Court can consider only whether the allegations contained in the complaint state a claim for which relief can be granted. *Roth Steel Prod. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir. 1983). The motion shall granted only if "no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief." *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 996 (6th Cir.1994), *cert. denied,* 511 U.S. 1128, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994). However, "the complaint is not to be dismissed because the

plaintiff has misconceived the proper theory of the claim, if he is entitled to any relief under any theory." *Myers v. United States,* 636 F.2d 166, 169 (6th Cir.1981).

A *pro se* litigant's complaint is to be construed liberally, *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991); that is, it is held to a "less stringent standard" than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Such complaints, however, must plead facts sufficient to show a cognizable legal wrong has been committed from which plaintiff may be granted relief. Fed.R.Civ.P. 12(b); *In re DeLorean,* 991 F.2d at 1240 [full cite]; *Dekoven v. Bell,* 140 F.Supp.2d 748, 752 (E.D.Mich.2001).

 The Prison Litigation Reform Act (PLRA), Pub.L. No. 104–134, made exhaustion of administrative remedies a prerequisite in prisoner civil rights cases alleging unsatisfactory prison conditions. Prior to the adoption of the PLRA, courts in such cases had the option to excuse a failure to exhaust administrative remedies if those remedies did not meet minimum fairness and effectiveness standards, or the court could continue the case for a period of 180 days to allow a prisoner to satisfy exhaustion requirements. *See Jenkins v. Toombs,* 32 F.Supp.2d 955, 957 (W.D.Mich.1999) (citing 42 U.S.C. § 1997e(a) (1994)). In adopting the PLRA, Congress removed this discretion and the statute now reads: "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.;* 42 U.S.C. § 1997e(a) (Supp.1998). Thus, under the statute's present iteration, a prisoner's failure to demonstrate exhaustion of internal remedies is grounds for

automatic dismissal. *See Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir. 1998). The internal administrative procedures must be followed even if they do not offer the precise relief that the prisoner seeks. *See Booth v. Churner,* 532 U.S. 731, 740, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Dismissal without prejudice is required even if the time for filing the required grievance has expired. *See Wright v. Morris,* 111 F.3d 414, 417 n. 3 (6th Cir.1997). A prisoner cannot abandon the grievance process before completion and then claim to have exhausted administrative remedies. *Hartsfield v. Vidor,* 199 F.3d 305, 309 (6th Cir.1999).

█ Unanswered in either the statute's language or in the Sixth Circuit's published case law is the question of the disposition of cases where a prisoner has exhausted administrative remedies with respect to some but not all of the claims against some but not all of the defendants. In *Knuckles El v. Toombs,* 215 F.3d 640, 642 (6th Cir. 2000), the Sixth Circuit "reserve[d] to another day the question of whether 'exhausted claims' in a 'mixed complaint' should be addressed when such claims would otherwise meet the pleading requirement or whether such claims should be dismissed in their entirety." There does not appear to consensus on this point within this district, or in neighboring districts or circuits, or in the Sixth Circuit's unpublished decisions.

This district's view is currently expressed by conflicting opinions authored by two magistrate judges, each of which was adopted by the respective district judges without comment on the merits of the total exhaustion rule. *Compare Cain–El v. Burt,* 2003 WL 21648721 (E.D.Mich., March 31, 2003) (Pepe, M.J.) (rejecting total exhaustion rule), *adopted* by Judge Duggan, 2003 WL 21653129 (June 3, 2003), *with Chamberlain v. Overton,* 326 F.Supp.2d 811 (E.D.Mich.2004) (Mag. Judge's Report and Recommend. adopted by Judge O'Meara) (applying total exhaustion rule). There are opposing published opinions on the issue from the Western District of Michigan. *Compare Jenkins,* 32 F.Supp.2d 955 (rejecting a total exhaustion requirement for the disposition of mixed cases in prisoner civil rights cases) *with Smeltzer v. Hook,* 235 F.Supp.2d 736 (W.D.Mich.2002) (applying total exhaustion rule); *see also Alexander v. Davis,* 282 F.Supp.2d 609, 610–12 (W.D.Mich.2003) (discussing the different viewpoints).

The magistrate judge in this case canvassed the unpublished decisions of the Sixth Circuit dealing with the issue and found instances in which the district courts were instructed to dismiss unexhausted claims and proceed with the exhausted ones, and those in which district courts applying the "total exhaustion" rule to dismiss an entire case were affirmed. For instance, in *Williams v. McGinnis,* 234 F.3d 1271, 2000 WL 1679471, at *2 (6th Cir.2000); *Fisher v. Wickstrom,* No. 00–1162, 2000 WL 1477232, at *1 (6th Cir. Sept.25, 2000); *McElhaney v. Elo,* 230 F.3d 1358, 2000 WL at 1477498, at *3 (6th Cir.2000) (table); *Wash v. Rout,* 215 F.3d 1328, 2000 WL 658925 (6th Cir.2000) (table), *cert. denied,* 531 U.S. 947, 121 S.Ct. 347, 148 L.Ed.2d 279 (2000); *Riley v. Richards,* 210 F.3d 372, 2000 WL 332013, at *2 (6th Cir.2000) (table), the court of appeals stated that "[i]f a complaint contains exhausted and unexhausted claims, the district court may address the merits of the exhausted claims and dismiss only those that are unexhausted." However, the court of appeals also has affirmed decisions of district courts applying the total exhaustion rule to dismiss without prejudice so-called "mixed" complaints. *See Keenan v. Twommey,* 229 F.3d 1152, 2000 WL 1175621, at *1 (6th Cir.2000) (table);

*Kemp v. Jones,* 42 Fed.Appx. 744, 745 (6th Cir.2002). The Court has not found a Sixth Circuit decision that mandates the application of a total exhaustion rule, although in an unpublished decision the court stated that in a case where the plaintiff had exhausted his administrative remedies as to only two of six defendants, the "better practice" was to dismiss the entire complaint without prejudice. *Bomer v. Hakola,* 84 Fed.Appx. 585, 587 (6th Cir. 2003) (unpublished).

Other Circuits are divided on whether a total exhaustion rule must be read into 42 U.S.C. § 1997e(a). *Compare Ortiz v. McBride,* 380 F.3d 649, 656 (2d Cir.2004) (stating that "[t]he question, then, is whether the district court was therefore required, under a so-called 'total exhaustion' rule, to dismiss the action in its entirety despite the presence of an otherwise viable, fully exhausted claim. We think not"), *with Ross v. County of Bernalillo,* 365 F.3d 1181, 1190 (10th Cir.2004) (holding that "[i]f a prisoner does submit a complaint containing one or more unexhausted claims, the district court ordinarily must dismiss the entire action without prejudice").

In his report and recommendation, the magistrate judge in this case contends the appropriate reading of the PLRA's language mandates a total exhaustion rule. Such a rule, in the magistrate judge's view, would require the Court to dismiss in its entirety a prisoner's civil rights case containing both exhausted and unexhausted claims, rather than dismissing only the unexhausted claims. The Court does not believe that such a drastic measure is mandated by the language of the statute.

The language of Section 1997e(a) that "no action shall be brought" does not speak directly to the question of mixed petitions. The Court in *Jenkins* observed that nearly identical language in the habe-

as statute was found by the Supreme Court to be inconclusive on the same issue in *Rose v. Lundy,* 455 U.S. 509, 516–17, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). *Jenkins,* 32 F.Supp.2d at 958. In *Ortiz,* the Second Circuit observed:

> we do not think that it follows that the only possible response to the impermissibility of the bringing of the action is to dismiss it in its entirety—to kill it rather than to cure it. The statute does not say so. And section 1997e(c), which addresses "dismissals" of some such suits by prisoners—and is therefore the place where we would expect to find guidance as to whether dismissal of "mixed" actions is required—is silent on the issue.

*Ortiz,* 380 F.3d at 657 (footnote omitted).

The reference to Section 1997e(c) addressed another tenet of statutory construction "that similar language contained within the same statute must be accorded a consistent meaning." *National Credit Union Administration v. First National Bank and Trust Co.,* 522 U.S. 479, 501, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). Reading Section 1997e(a) to mandate a total exhaustion rule would not serve the principle of consistency. As the *Jenkins* court noted, other uses of the term action in the PLRA provide little support for total exhaustion. *Jenkins,* 32 F.Supp.2d at 958. Section 42 U.S.C. § 1997e(c)(1)-(2) states:

> (1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

Applying a mandatory "total exhaustion" rule would require the dismissal of an entire "action" if at least one of the claims were found to frivolous, without merit, or brought against an immune defendant. However, Section 1997e(c)(2) explicitly permits the court to dismiss underlying claims that are malicious, frivolous, or otherwise inadequate and proceed to consider remaining claims. Thus, "Congress does not appear to have intended this [inconsistent] result, since it specifically provides for the dismissal of unexhausted individual claims." *Jenkins*, 32 F.Supp.2d at 958.

When confronted by this same problem of dealing with "mixed" petitions absent explicit statutory guidance in the habeas context in *Rose*, the Supreme Court turned to the policies underlying the exhaustion requirement in the habeas statute to determine if they augured in favor of a "total exhaustion" requirement. *See Rose*, 455 U.S. at 517, 102 S.Ct. 1198. The Court answered the question in the affirmative, and other courts that have concluded that Section 1997e(a) mandates a "total exhaustion" rule have reasoned by analogy to *Rose. See Smeltzer*, 235 F.Supp.2d at 743–44. However, the Court does not believe that the policies underlying total exhaustion in the habeas context mirror the policies behind the PLRA's requirements, nor are they directly applicable under the procedures that are unique to this Circuit for prison condition cases.

In *Rose*, the Supreme Court cited two main reasons for requiring total exhaustion in habeas cases: comity, which "teach-es that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter," *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950); and total exhaustion increases the likelihood of development of a complete factual record in the state court. *Rose*, 455 U.S. at 519, 102 S.Ct. 1198. In the PLRA context, the need for comity is absent since there are no state courts involved in such claims, and the administrative proceedings rarely yield a record that can be helpful to judicially resolving the disputed questions in the lawsuit. Of course, the principal reason for the PRLA's exhaustion rule is to give prison officials the first opportunity to resolve its internal problems in a way that likely will be more efficient than dealing with a federal lawsuit. *See Thomas v. Woolum*, 337 F.3d 720, 727 (6th Cir.2003). However, a total exhaustion rule is not required to achieve that goal.

The interests that are at stake in a habeas proceeding are different than those addressed in a prison conditions lawsuit under Section 1983. Those differences have not escaped comment by higher tribunals. *See Muhammad v. Close*, 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004); *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (confirming that exhaustion of state *judicial* remedies is a necessary prerequisite for one but not the other). In addition, in a habeas petition, the prisoner challenges the validity of his confinement under the authority of a state court judgment. It is sensible to require that all grounds upon which the invalidity of the judgment is claimed be presented to the state court before a federal court is asked to review them. A prisoner civil rights case, howev-

er, challenges the conditions of confinement on grounds that may arise at various times during the term of a prisoner's sentence. The resulting lawsuit therefore focuses on one or more separate events rather than on a discreet judgment. Although efficiency suggests combining all such claims in a single lawsuit when feasible, the dismissal of an entire lawsuit when only one such claim has not been administratively exhausted (or otherwise lacks merit) does little to promote efficiency or any of the other interests the PLRA was meant to advance.

Courts advocating a "total exhaustion" rule suggest that it will promote efficiency by eliminating piecemeal litigation. *See Ross*, 365 F.3d at 1184; *Smeltzer*, 235 F.Supp.2d at 744. However, other courts have debunked that argument by observing that a "total exhaustion" rule may actually increase the burden on federal courts. *See Jenkins*, 32 F.Supp.2d at 958–59 (observing that "[b]ecause of the limited time frame for pursuing administrative remedies in the Michigan prison system, a prisoner may not be able to raise or resolve unexhausted claims within state and local institutions.... Given these procedural barriers, prisoners are likely to simply amend their complaints to eliminate the unexhausted claims and refile. In that case, courts would be faced with exactly the same claims that could have been resolved at the outset"); *Cain–El*, 2003 WL 21648721 at *4 (noting that when a prisoner amends and refiles, one lawsuit turns into two).

 Moreover, the Court in *Rose* contemplated the prisoner's ability to avoid dismissal of a "mixed" habeas petition and receive prompt consideration of his exhausted claims by amending his petition to dismiss the unexhausted claims, although risking dismissal of subsequent habeas petitions for abuse of the writ. Likewise, if a

habeas petitioner chooses not to delete an unexhausted claim from a habeas petition, he nonetheless may seek a stay in federal court and return to state court to exhaust his unexhausted claims and later return to federal court and revive his petition. *See Duncan v. Walker*, 533 U.S. 167, 182–83, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (Stevens, J. concurring); *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir.2002). However, those avenues are not available to a prisoner in this Circuit under the PLRA, since amendment of a complaint to allege exhaustion is not allowed even if exhaustion of administrative remedies actually has occurred. *Baxter*, 305 F.3d at 490.

Courts adopting a "total exhaustion" rule cite the Eighth Circuit's decision in *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir.2000) (holding that "[w]hen multiple prison condition claims have been joined, as in this case, the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims"), to support their choice. *See Ross*, 365 F.3d at 1188–89; *Smeltzer*, 235 F.Supp.2d at 743. However, the Eighth Circuit applies its rule in the context of the liberal amendment requirement of Federal Rule of Civil Procedure 15. Thus, the approach now taken by the Eighth Circuit is to allow a prisoner the option of amending a complaint to delete unexhausted claims before applying its version of the "total exhaustion" rule. *See Kozohorsky v. Harmon*, 332 F.3d 1141, 1144 (8th Cir.2003).

The Court's mandate under the screening requirements of 28 U.S.C. § 1915A(a) is to ensure compliance with the PLRA. A "total exhaustion" rule certainly achieves that result. Another path to that goal—ensuring that the action brought to challenge prison conditions does not include unexhausted claims under 42 U.S.C.

§ 1997e(a)—is for the Court to dismiss those claims that have not been subject to the State's available administrative procedures. If the object of the exercise is to ensure that an action does not proceed with unexhausted claims, it makes little difference whether the prisoner is allowed an opportunity to amend to eliminate them, or the Court strips them away by dismissal on a claim-by-claim basis. But, as mentioned above, in this Circuit the amendment option is not available in non-habeas, prisoner litigation. *See Baxter*, 305 F.3d at 490.

■ I do not read unpublished pronouncements from the Sixth Circuit that allow a prisoner to proceed with a "mixed complaint" after the unexhausted claims are dismissed as being inconsistent with those unpublished decisions that affirm dismissals on the basis of a "total exhaustion" rule. Consistency can be found, I believe, in the view that the district court has the discretion to either dismiss a "mixed complaint" in its entirety or approach the task of ensuring compliance with the PLRA on a claim-by-claim basis. Allowing discretion to choose the appropriate course of action is especially fitting where the option to allow a pleading amendment is not available.

■ The factors the Court should consider in deciding appropriate remedial action include whether the exhausted claims are inextricably bound to the unexhausted claims so that adjudication of the former might result in a decision on the latter; whether the exhausted claims involve an incident that is separate and distinct from the unexhausted claims and are easily severable; the nature of the unexhausted claims and their centrality in the dispute; the tangential quality of the unexhausted claims in relation to the exhausted claims; where the unexhausted claims involve separate individuals, as they often do, whether

presence of those defendants in the lawsuit is necessary or desirable for the complete adjudication of the matter; the merits of the unexhausted claim, that is, whether it is substantial or frivolous, fails to state a claim, or seeks money from a defendant who is immune from suit; and whether the plaintiff has acquiesced in the dismissal of the unexhausted claims.

■ In this case, the plaintiff complains of events that occurred between March 2, 2002 and December 9, 2002. He says that his complaints range from deliberate indifference, to refusal to provide medical treatment, to claims that might be characterized as negligence or medical malpractice. It appears that the main target of the plaintiff's criticism is Dr. Thakur, and that Dr. Antonini simply "fell in alignment with Thakur's flawed decision." Compl. ¶ 7. The plaintiff does not allege any wrongful conduct against Craig Hutchingson, only that the plaintiff filed a formal complaint with him. *Id.* ¶ 15. The Court concludes, therefore, that the claims against defendants Antonini and Hutchingson are insubstantial and easily severable. Those claims involve separate individuals whose presence in the case is not necessary for the adjudication of the remaining claims. Finally, in his objections to the magistrate judge's report and recommendation, the plaintiff asks that the claims against Antonini and Hutchingson be dismissed and that he be allowed to proceed against the remaining defendants.

Under these circumstances, the Court believes that it is not efficient or economical to apply a "total exhaustion" rule to the complaint. Nor does the language of the PLRA require such a rule.

### III.

For the reasons stated, the PLRA's plain language, legislative history, and un-

derlying policies do not mandate the adoption of the a total exhaustion rule with respect to the disposition of prisoner civil rights cases. However, a court may apply such a rule in appropriate cases. In this case, the rule should not be applied.

Defendants Dr. Thakur, Dr. Larky, Dr. M. Clark, Dr. Romono, physicians' assistants Mooney and Potter moved for dismissal on several grounds, including that the plaintiff failed to exhaust his administrative remedies at to those defendants. It is not clear that the magistrate judge reached a conclusion that exhaustion as to these parties was completed through all stages of the State's administrative procedure. In addition, there are other grounds for dismissal not addressed by the magistrate judge. Defendant Clark also filed a motion to dismiss or for summary judgment [dkt# 50], on which the magistrate judge filed a report recommending denial as moot if the report on the present motion is accepted. No objection to that report was filed, but since the report was contingent on acceptance of a "total exhaustion" rule, the Court will not adopt the report but rather vacate the recommendation, so that the magistrate judge may proceed to an evaluation of the merits of that motion.

Accordingly, it is **ORDERED** that the Magistrate Judge's Report and Recommendation [dkt # 75] is **REJECTED**.

It is further **ORDERED** that the motion to dismiss filed by defendants Thakur, Antonini, and Hutchingson [dkt # 25], and joined in by defendants Larky [dkt # 47], Romono [dkt # 30], Mooney [dkt # 33], and Potter [dkt # 38], is **DENIED** with respect to defendants Dr. Thakur, Dr. Larky, Dr. Romono, physician's assistants Mooney and Potter.

It is further **ORDERED** that the defendants' motion to dismiss [dkt # 25] is

**GRANTED** with respect to Dr. Antonini and Craig Hutchingson.

It is further **ORDERED** that the report and recommendation [dkt # 77] on the motion to dismiss by defendant Clark [dkt # 50] is **REJECTED** and **VACATED**.

It is further **ORDERED** that the matter is referred to Magistrate Judge Charles E. Binder to conduct further pretrial proceedings, including revisiting the motions to dismiss in order to evaluate other grounds if appropriate.